J-S05042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEPHEN MICHAEL KENNEDY, | |
| Appellant | No. 315 MDA 2015 |

Appeal from the Judgment of Sentence March 26, 2014
in the Court of Common Pleas of Lebanon County
Criminal Division at No.: CP-38-CR-0001208-2013

BEFORE:  BENDER, P.J.E., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED FEBRUARY 17, 2016**

Appellant, Stephen Michael Kennedy, appeals *nunc pro tunc* from the judgment of sentence imposed following his jury conviction of involuntary deviate sexual intercourse with a child and related offenses.[1]  He asserts he was denied counsel for his preliminary hearing, alleges several due process violations, claims evidentiary errors, and challenges the weight and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] In his notice of appeal, Appellant incorrectly purports to appeal from the order granting him PCRA relief and reinstating his direct appeal rights.  (**See** Notice of Appeal, 2/12/15).  A direct appeal is taken from the judgment of sentence.  We have amended the caption accordingly.

sufficiency of the evidence. We affirm, in part on the basis of the trial court's opinions.[2]

In its opinions, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length here. For clarity and the convenience of the reader we note briefly that Appellant's conviction stemmed from an episode on the night of January 9/10, 2008, when he had the then-five year-old victim perform oral sex on him, while he was babysitting her and her younger sister. The victim informed her grandmother, and an investigation began.

Immediately preceding trial, after notice by the Commonwealth, the court conducted a Tender Years hearing. At trial a serologist and a DNA expert testified that Appellant's DNA was found in seminal fluid on a comforter (blanket) in the bedroom of the victim's mother, where the victim testified the sexual assault occurred. Appellant testified on his own behalf, denying that anything inappropriate happened. (**See** N.T. Trial, 1/09/14, at 174). He denied knowledge of how the DNA got on the blanket, but maintained that he had borrowed it previously, right after Thanksgiving, when he first moved into his apartment. (**See id.** at 179, 190). The

---

[2] The trial court filed an opinion explaining its order which denied the post-sentence motion, on August 1, 2014. The trial court also filed a Rule 1925(a) opinion on April 15, 2015, which included a reference to its prior opinion of August 1, 2014. We attach a copy of both opinions.

victim's mother testified that she had only received the comforter weeks later, as a Christmas gift. (*See id.* at 142).

After his jury conviction of all counts, Appellant, through preceding counsel, filed an omnibus post-sentence motion. (*See* Post Sentence Motions, 4/04/14). The motion sought a new trial, alleging the verdict was against the weight of the evidence. Appellant also objected to the trial court's admission of testimony about the victim's previous statements to her grandmother, a Children and Youth Services case worker and a police officer, all of whom had investigated the victim's claims, under the Tender Years Doctrine. (*See id.* at 2). Finally, Appellant objected generally to the sufficiency of the evidence. (*See id.* at 3).

The trial court denied the post-sentence motion on August 1, 2014. Appellant's previous direct appeal was quashed for untimeliness on October 6, 2014. Appellant filed a *pro se* Post Conviction Relief Act (PCRA) petition, 42 Pa.C.S.A. §§ 9541–46, on December 22, 2014. On the same date the PCRA court appointed Appellant's current counsel.

After his direct appeal rights were reinstated, on January 27, 2015, this *nunc pro tunc* appeal followed. Current counsel filed a new statement of errors. (*See* Concise Statement, 2/23/15); *see also* Pa.R.A.P. 1925(b). As already noted, the trial court filed a Rule 1925(a) opinion on April 15, 2015, which included a reference to its prior opinion of August 1, 2014. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises twelve issues, framed as the following eight questions, for our review:

1. [W]as [Appellant] denied his constitutional right to legal representation when he was not afforded an attorney for his [p]reliminary [h]earing, where [Appellant] explicitly requested representation[?]

2. [W]as [Appellant] denied his right to due process when he was not given the requested records of his [p]reliminary [h]earing, which could have been used to impeach witnesses' testimonies at [t]rial[?]

3. [W]as [Appellant] denied his right to due process when the Commonwealth failed to disclose evidence to defense until minutes before the commencement of [t]rial, where the Commonwealth had had said evidence in its possession for several years, and where [Appellant] had requested the disclosure of all evidence, as [Appellant] was unable to examine said evidence and adequately consult with [t]rial [c]ounsel so as to prepare a valid defense[?]

4. [W]as [Appellant] denied his right to due process when the Commonwealth failed to disclose information regarding the alleged victim's mother and guardian who were involved with police charges and a pending Children and Youth investigation, and thereby given plea deals, which allowed for lighter sentences, and were subsequently sentenced on the day in which [Appellant] was charged[?]

5. [Did the t]rial [c]ourt [err] when it held a Tender Years Hearing minutes before Trial, where [Appellant] did not have sufficient notice of such a proceeding[?]

6. [Did the t]rial [c]ourt [err] when it permitted the testimony adduced from the Tender Years Hearing to be used at [t]rial[?]

7. [Was t]he verdict [ ] against the weight of the evidence adduced at [t]rial, where the DNA did not match the alleged victim and where the testimonies of witnesses' [sic] conflicted with one another[?]

8. [Was t]he verdict [ ] insufficient to sustain a conviction of Involuntary Deviate Sexual Intercourse with a Child; Indecent Assault of a Person Less Than Thirteen (13) Years of Age; Corruption of Minors; Endangering the Welfare of Children; and Indecent Exposure[?]

(Appellant's Brief, at 7-8).

Preliminarily, we are reminded of the observation by the Honorable Ruggero J. Aldisert, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, that this Court has previously cited in **Kenis v. Perini Corp**., 452 Pa. Super. 634, 682 A.2d 845 (1996), as well as other cases:

When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

**Id.** at 847 n. 3 (citations omitted); **see also Commonwealth v. Snyder**, 870 A.2d 336, 340 (Pa. Super. 2005) ("[T]he effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them.") (citations omitted).

**J.J. DeLuca Co. Inc. v. Toll Naval Associates**, 56 A.3d 402, 409-10 (Pa. Super. 2012).

In his first issue, Appellant asserts that he was denied his constitutional right to counsel at his preliminary hearing even though he "explicitly requested representation." (Appellant's Brief, at 13). The trial judge notes that this claim and certain additional claims were not raised until Appellant filed his concise statement of errors. (**See** Trial Court Opinion, 4/15/15, at unnumbered page 6). We observe that Appellant does not reference in his brief where this issue was properly raised and preserved

with the trial court. Accordingly, this issue is waived. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

> Appellate courts in Pennsylvania routinely decline to entertain issues raised on appeal for the first time. Indeed, the Pennsylvania Appellate Rules of Procedure specifically proscribe such review. ***See*** Pa.R.A.P. 302(a). The Rules and case law indicate that such a prohibition is preferred because the absence of a trial court opinion can pose a "substantial impediment to meaningful and effective appellate review." Further, appellate courts normally do not consider matters outside the record or matters that involve a consideration of facts not in evidence. Most importantly, appellate courts do not act as fact finders, since to do so would require an assessment of the credibility of the testimony and that is clearly not our function.

***Commonwealth v. Grant***, 813 A.2d 726, 733-34 (Pa. 2002) (case citations and internal quotation marks omitted). Moreover, it would not merit relief.

In a predominantly narrative driven argument which relies largely, if not exclusively, on Appellant's personal recollections, Appellant maintains that the prosecutor told him that counsel to represent him at the preliminary hearing had left his office, was on his way to court, and other similar assurances. (***See*** Appellant's Brief, at 14).[3] Nevertheless, no counsel arrived.

_____

[3] The Commonwealth vigorously disputes all of these claims and insists that Appellant did not ask for representation, calling Appellant's facts "an absolute lie." (Commonwealth's Brief, at 7).

There is no transcript of the preliminary hearing. (**See** Trial Ct. Op., 4/15/15, at unnumbered page 4). Consequentially, there is no support for any of Appellant's claims in the certified record.

> This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. **Commonwealth v. O'Black**, 897 A.2d 1234, 1240 (2006). This requirement is not a mere "technicality" nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae* in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.

**Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007).

Moreover, even assuming for the sake of argument that Appellant did not receive the assistance of counsel that he requested for the preliminary hearing, he is not automatically entitled to a reversal of his conviction.

> It is axiomatic that the preliminary hearing is a "critical stage" of a criminal proceeding, at which Appellant is entitled to the assistance of effective counsel. **Coleman v. Alabama**, 399 U.S. 1, 90 S. Ct. 1999, 26 L.Ed.2d 387 (1970); **Commonwealth v. Rines**, 247 Pa. Super. 429, 372 A.2d 901 (1977); **Commonwealth v. Redshaw**, 226 Pa. Super. 534, 323 A.2d 92 (1974). However, lack of representation at a preliminary hearing must result in **specific prejudice** to a defendant, **Coleman**, *supra*; **Commonwealth v. Sawyer**, 238 Pa. Super. 213, 357 A.2d 587 (1976), that is, it is subject to the harmless error test. **See Redshaw**, 226 Pa. Super. at 536, 323 A.2d at 93. "**If Appellant suffers no prejudice, he is entitled to no remedy.**" **Rines**, 247 Pa. Super. at 432, 372 A.2d at 903 (citation omitted).

**Commonwealth v. Carver**, 436 A.2d 1209, 1211 (Pa. Super. 1981) (emphases added).

Here, Appellant offers mere generalities about the benefit of counsel who could have asked "legally-appropriate questions" at the preliminary hearing. (Appellant's Brief, at 18). He suggests an identification issue but fails to develop it and offers absolutely no authority whatsoever in support of it. (*See id.*). Instead, he basically tries to blame Charles Tapley, a friend and visitor that night. Tapley testified at trial. He claimed he just came to deliver cigarettes to Appellant and only stayed briefly. (*See* N.T. Trial, 1/09/14, 153-54). The jury was able to weigh the testimony of both men and weigh their credibility.

In any event, identification is not seriously at issue in this case, where the victim knew Appellant as the babysitter who in fact had babysat her and her sister at least one previous night as well as the night in question. He was a friend of the family through the mother's boyfriend. The victim identified Appellant by name to her grandmother as her assailant. Appellant's first issue is waived and would not merit relief.[4]

In his second issue, Appellant claims a denial of due process in the failure to provide him with the transcript of the preliminary hearing. (*See* Appellant's Brief, at 7). This issue is moot. We defer to the trial court's

---

[4] We also note that this Court has held that "[o]nce appellant has gone to trial and been found guilty of the crime, any defect in the preliminary hearing is rendered immaterial." *Commonwealth v. Jackson,* 849 A.2d 1254, 1257 (Pa. Super. 2004) (citing *Commonwealth v. Tyler,* 587 A.2d 326, 328 (Pa. Super. 1991), *appeal quashed,* 617 A.2d 1263 (Pa. 1992)).

finding, previously noted, that a transcript of the preliminary hearing does not exist. Appellant's second issue does not merit relief.[5]

Appellant's third issue challenges the delivery of evidence only minutes before trial began. (*See* Appellant's Brief, at 7). The trial court notes this is one of the issues raised for the first time in the concise statement. (*See* Trial Ct. Op., 4/15/15, at unnumbered page 6). Appellant does not reference any objection to the trial court, request for a delay of trial or a continuance, or any other objection whatsoever prior to the filing of the concise statement. (*See* Appellant's Brief, at 20-23). Appellant's issue is waived. *See* Pa.R.A.P. 302(a).

Appellant's fourth claim is that the Commonwealth failed to advise him until shortly before trial of mother's and guardian's involvement with the police and Children and Youth Services. (*See* Appellant's Brief, at 4-5, 23-25). It fails for the same reason. (*See* Trial Ct. Op., 4/15/15, at unnumbered page 6); *see also* Pa.R.A.P. 302(a).

Appellant's fifth and sixth claims challenge the trial court's admission of testimony under the Tender Years doctrine, after a hearing, before trial. (*See* Appellant's Brief, at 8). He objects to the timing of the hearing and the use of testimony at trial. (*See id.* at 25-28). The claims do not merit relief.

_____

[5] Moreover, we note that, because no testimony by Appellant from the preliminary hearing was offered at trial, he suffered no prejudice from the use of uncounseled testimony.

The standard of review governing evidentiary issues is settled. The decision to admit or exclude evidence is committed to the trial court's sound discretion, and evidentiary rulings will only be reversed upon a showing that a court abused that discretion. A finding of abuse of discretion may not be made "merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Laird*, 605 Pa. 137, 988 A.2d 618, 636 (2010) (citation and quotation marks omitted); *see also Commonwealth v. Sanchez*, 614 Pa. 1, 36 A.3d 24, 48 (2011). Matters within the trial court's discretion are reviewed on appeal under a deferential standard, and any such rulings or determinations will not be disturbed short of a finding that the trial court "committed a clear abuse of discretion or an error of law controlling the outcome of the case." *Commonwealth v. Chambers*, 602 Pa. 224, 980 A.2d 35, 50 (2009) (jury instructions)[.]

*Commonwealth v. Koch*, 106 A.3d 705, 710-11 (Pa. 2014).

Here, we affirm on the basis of the trial court's opinion. (*See* Trial Court Opinion, 8/01/14, at 10-16) (finding Appellant had adequate notice of hearing; and concluding testimony contained sufficient indicia of reliability, including spontaneity and consistency, victim's use of terminology that was appropriate for a child of her age, and was corroborated by physical evidence). Appellant's fifth and sixth claims do not merit relief.

Appellant also challenges the weight and the sufficiency of the evidence. (*See* Appellant's Brief, at 8; *see also id.* at 28-49). Appellant presents, at some length, an account of the incident, highlighting perceived inconsistencies in the narrative based on his review of trial testimony. (*See id.*).

- 10 -

As recognized by Appellant, only if the evidence is so unreliable or contradictory as to make any verdict based on it pure conjecture, is a new trial based on a weight claim warranted. (*See id.* at 4). Also, on sufficiency, Appellant acknowledges that it was the province of the jury as factfinder to determine the weight of the testimony and to believe all, part or none of the evidence. (*See id.* at 5).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the weight and sufficiency issues Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (*See* Trial Ct. Op., 8/01/14, at 16-21) (concluding: (1) (jury verdict did not shock one's sense of justice; and (2) evidence was sufficient to sustain jury's verdict of guilty on all charges). Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2016

- 11 -



ENTERED & FILED

2014 AUG -1 P 1:52

CLERK OF COURTS
LEBANON, PA

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     NO. CP-38-CR-1208-2013
                                        :

v.                                       :

STEPHEN M. KENNEDY                   :

**ORDER OF COURT**

AND NOW, this 1st day of August, 2014, upon consideration of Defendant's

Post Sentence Motion, and the Briefs submitted by the parties, it is hereby

Ordered that said Motion is DENIED.

Pursuant to Pa.R.Crim.P. 720(B), Defendant is advised that he has the right

to appeal from this denial to the Superior Court of Pennsylvania. An appeal must

be filed in writing no later than thirty (30) days from the date of this Order.

Defendant has the right to the assistance of counsel in the preparation of an

appeal. In the event that Defendant is indigent, he has the right to appeal *in*

*forma pauperis* and to proceed with assigned counsel as provided by Pa.R.Crim.P.

1

122. Defendant has the qualified right to bail under Pa.R.Crim.P. 521(B).

BY THE COURT:

_____, P.J.
JOHN C. TYLWALK

JCT/jah
Cc: Megan E. Ryland-Tanner, Esquire
    Kimberly Adams, Esquire
    Judith A. Huber, Esquire, Law Clerk

_inter office_

PURSUANT TO Pa.R.Crim. P. 114
All parties are hereby notified
this date: 8-1-14 dk
Clerk of Courts, Lebanon, PA

2

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :  NO. CP-38-CR-1208-2013
 :
 v. :
 :
STEPHEN MICHAEL KENNEDY :

**APPEARANCES:**

**MEGAN E. RYLAND-TANNER, ESQUIRE** **FOR THE COMMONWEALTH**
**ASSITANT DISTRICT ATTORNEY**

**KIMBERLY ADAMS, ESQUIRE** **FOR STEPHEN MICHAEL KENNEDY**
**FIRST ASSISTANT PUBLIC DEFENDER**

**OPINION, TYLWALK, P.J., AUGUST 1, 2014.**

After a jury trial on January 9, 2014, Defendant was convicted of one count of Involuntary Deviate Sexual Intercourse with a Child, one count of Indecent Assault, one count of Corruption of Minors, one count of Endangering the Welfare of Children and one count of Indecent Exposure.[1] The charges stem from an incident which occurred overnight on January 9 and 10, 2008 when Defendant

---

[1] Counts 1 through 5, 18 Pa.C.S.A. §3123(b), 18 Pa.C.S.A. §3126(a)(7), 18 Pa.C.S.A. §6301(a)(1), 18 Pa.C.S.A. §(a)(1) and 18 Pa.C.S.A. §(a), respectively.

1

was babysitting the two young daughters of his next-door-neighber, Nicole Heisey ("Nicole"). On May 28, 2014, he was sentenced, *in absentia,* as follows:

| Count 1 | Involuntary Deviate Sexual Intercourse with a Child | 10 – 30 years |
|---------|------------------------------------------------------|---------------|
| Count 2 | Indecent Assault | 1 – 3 years |
| Count 3 | Corruption of Minors | 1 – 3 years |
| Count 4 | Endangering the Welfare of Children | 1 – 3 years |
| Count 5 | Indecent Exposure | 1 – 3 years |

The Sentence was to be computed from June 27, 2013 and to run concurrently. Defendant has filed a Post Sentence Motion which is before the Court for disposition.

In anticipation of the trial in this matter, the Commonwealth filed a Tender Years Notice regarding its intention to introduce testimony of statements the minor victim, A.H., had made to her grandmother, Bonita Heisey ("Grandmother"), Lebanon County Children and Youth ("CYS") caseworker Ana Marquez ("Marquez"), and Sergeant Gerald Cassel ("Sergeant Cassel") of the South Londonderry Township Police Department. We conducted a Tender Years Hearing ("TYH") on January 9, 2014 immediately prior to the commencement of

2

the jury trial. At the TYH, the Commonwealth presented the testimony of Grandmother, Marquez, and Sergeant Cassel.

Grandmother testified that she was driving A.H. and her younger sister to the playground on January 13, 2008 when A.H. commented that she had been kissed. (TYH N.T. at 4-5) When Grandmother asked who had kissed her, A.H. said that it was "Mike" and that he kissed her on the lips like a man kisses a woman and then a kiss below on her bottom half and that this had occurred when he was babysitting. (TYH N.T. at 4-5, 8) Grandmother described A.H.'s comments as occurring during a normal conversation and noted that A.H. was extremely calm and acted as if it were "no big deal." (THY N.T. at 6) Grandmother then allowed A.H. to run around the playground and engage in her normal activities. (THY N.T. at 6-7) As they were playing, A.H. related to Grandmother that Defendant had touched her younger sister, and that he and A.H. took off their clothing and danced around the living room and then went to Nicole's bedroom. (THY N.T. at 7) A.H. commented that she had to kiss his penis and that Defendant then made it "rain" while she was sitting on Nicole's bed. (THY N.T. at 7-8) Grandmother told A.H. that "this was a sick person who needed to see a doctor" and that "things like this shouldn't happen." (TYH N.T. at 9) A few days later, when Grandmother was bathing A.H., A.H. told her that A.H. had been lying when she

3

had said that Defendant had put his hands down the younger sister's pants. (THY N.T. at 17) Grandmother explained that A.H. would often say that she was "lying" when she was scared or ashamed so that she would not get into trouble. (THY N.T. at 17)

Marquez testified that she had been present at an interview of A.H. which was conducted on March 8, 2010 at the CYS Office. (TYH N.T. at 21-22) Detective James Grumbine and Nicole were also present at that interview. (TYH N.T. at 22) During that interview, A.H. appeared very nervous and uncomfortable. (TYH N.T. at 23) A.H. answered some general questions regarding her age, etc., but as soon as the discussion turned to body parts and whether anyone had hurt her body, she became nervous and responded "I don't know" to the questions. (TYH N.T. at 22) After stating that Defendant was "bad," she refused to explain and became very uncomfortable. (TYH N.T. at 23-24) At that point, the interview was terminated. (TYH N.T. at 24)

Two years later on May 17, 2012, Marquez interviewed A.H. alone when she was nine years old. (TYH N.T. at 24-25) The day before she interviewed A.H., Marquez had interviewed Defendant and acknowledged that she was able to ask A.H. questions based on information provided by Defendant. (TYH N.T. at 31) During that two-year interval, A.H. had become familiar with Marquez due to CYS

4

dealings with the family. (TYH N.T. at 25, 30-32) A.H. was much more verbal and comfortable with Marquez by that point as she had learned that CYS offered help to families and that their involvement did not mean that she would be taken from her family. (TYH N.T. at 31) A.H. told Marquez that one night when Defendant was babysitting, he asked her for a kiss, and that he "French kissed" her. (TYH N.T. at 26) A.H. continued that Defendant had put his hand on her "pee pee" under her pajamas, that he took her back to her mother's bedroom and had her touch his "pee pee" with her hand and her mouth. (TYH N.T. at 26) When she did so, pee came out of his "pee pee" and went on the bed. (TYH N.T. at 26) She described the taste of the pee in her mouth as "gross." (TYH N.T. at 26) When A.H. spoke of her "pee pee," she pointed to her vaginal area. (TYH N.T. at 27)

At the TYH, Sergeant Cassell testified that once this matter was reported, he set up a forensic exam for A.H. at the Children's Resource Center ("CRC"). He also went to A.H.'s home and collected a comforter from Nicole's bed the day he received the report. (TYH N.T. at 39) He observed an interview, via close-circuit television, which was conducted at the CRC by Detective Grumbine on January 16, 2008. (TYH N.T. at 35) Sergeant Cassel explained that A.H. had "shut down" during that interview. (TYH N.T. at 35)

5

In 2012, Sergeant Cassel interviewed A.H. himself after receiving notification from Nicole that A.H. had indicated that she recalled this incident and was ready to speak with the police. (TYH N.T. at 36-37) Prior to conducting that interview, he was provided with a written statement prepared by A.H. (TYH N.T. at 37, Exhibit "2") This interview was recorded and the recording was admitted at the TYH as Exhibit "3." Sergeant Cassel also spoke to Nicole, Grandmother, and the CRC play therapy staff at various times before the interview. (TYH N.T. at 45-46) He acknowledged that his interview was in the form of question and answer and that he did provide some information during the questioning and gave positive reinforcement when A.H. gave useful information in her responses. (TYH N.T. at 46-47) During the interview, A.H. gave the same factual account of the incident as she had related to Grandmother and Marquez. (Exhibit "3") At the conclusion of the TYH, we ruled that all of the statements had the sufficient indicia of reliability to be presented to the jury at trial.

At the jury trial, Grandmother, Marquez and Sergeant Cassel testified as to the statements A.H. had made to them. Nicole testified that she had asked Defendant to babysit her two daughters for the overnight hours of January 9 to 10, 2008 while she worked the night shift at her job. (N.T. 1/9/14 at 38, 40) At

6

that time A.H. was five years of age [2] and her younger sister was two years old. (N.T. 1/9/14 at 38, 40) When she returned home from work in the morning, the girls were lying on the couch and loveseat in the living room. (N.T. 1/9/14 at 51-52) She explained that this was unusual as the girls had their own bedrooms. (N.T. at 52) Defendant was asleep on the living room floor. (N.T. 1/9/14 at 54)

The following day, A.H. told Nicole that "Mike" had kissed her. (N.T. 1/9/14 at 41) Nicole explained that Defendant's middle name is Michael and that he usually goes by that name. (N.T. 1/9/14 at 38) Nicole testified that Defendant was a friend of her boyfriend's and that he had stayed with them for a short time around Thanksgiving before he had moved into the apartment next door so that A.H. was familiar with him. (N.T. at 51) Nicole testified that after this incident, A.H. became very uncomfortable around men. (N.T. at 43-44)

After Grandmother told Nicole about the conversation she had with A.H. at the playground, Nicole contacted the South Londonderry Police Department and Sergeant Gerald Cassel then initiated his investigation. (N.T. at 41) Sergeant Cassel explained that he had taken the comforter from Nicole's bed after finding

---

[2] A.H.'s date of birth is June 7, 2002.

7

positive indications of bodily fluids on it with the Blue Max flashlight. (N.T. at 79-80)

Angela DiFiore, a forensic DNA scientist with the Pennsylvania State Police, testified regarding her analysis of the DNA which was found on the comforter. She testified that of two samples which were tested, there were sufficient alleles to pull two DNA profiles. (N.T. at 148) One belonged to Defendant and one belonged to another unidentified individual which did not match A.H. (N.T. at 148-150) DiFiore noted that Defendant's DNA was associated with the sperm fraction of the sample and that the unidentified DNA was associated with the non-sperm part of the samples. (N.T. at 140) DiFiore testified that the non-sperm portion could have been from skin cells, saliva, or other matter. (N.T. at 140)

Defendant also testified at the jury trial. He claimed that the comforter had been loaned to him by Nicole when he had been living in the apartment next door shortly after Thanksgiving 2007 and that he had not washed it prior to returning it to her. (N.T. at 161-162, 179) However, Nicole testified that she had received the comforter as a Christmas gift only a week or two prior to the incident and that she had not owned it when she had provided bedding to Defendant. (N.T. at 42, 57) Both Nicole and Defendant testified that they had never engaged in sexual relations together. (N.T. at 43, 178) Nicole also testified that she had never had

8

sexual relations in her bedroom after receiving the comforter because her boyfriend at the time of the incident was incarcerated. (N.T. at 43, 178)

At the jury trial, A.H., by then eleven and a half (11 ½) years old, testified that when she was five years old, Defendant had given her a tongue-to-tongue kiss, placed her hand on his "private," told her to suck his "private," and "peed" in her mouth. (N.T. at 8) A.H. indicated that she was on her mother's bed when she had Defendant's private part in her mouth. (N.T. at 10) When shown an anatomical drawing, A.H. identified the picture as representing a boy and circled the penis to define the "private part." (N.T. at 9, Exhibit "1")

At trial, Defendant testified that he had given both of the girls a kiss goodnight on the forehead, but that he had engaged in no inappropriate conduct. (N.T. at 169, 173-174) Defendant explained that the following day he went to Nicole's apartment and Nicole asked him if he kissed A.H. (N.T. at 175) He claimed that after he denied having done so, Nicole called to A.H. and A.H. screamed "I am lying, I am lying, I am lying." (N.T. at 175)[3]

Defendant further testified that on the night of this incident, another man, Charles Tappley, had also been in Nicole's apartment playing video games and

---

[3] Grandmother testified that A.H. would often say that she was lying when she felt scared or uncomfortable or was afraid of getting into trouble. (N.T. at 32)

9

drinking beer. (N.T. at 169) However, Tappley was not interviewed until six years later, on January 2, 2014. (N.T. at 156) Tappley was called by Defendant to testify at trial. However, he could only recall being in the apartment for a short period of time that evening to bring cigarettes to Defendant. (N.T. at 153-154)

**Testimony Pursuant to Tender Years Act**

Defendant first argues that he is entitled to a new trial because we erred in admitting the statements which A.H. made to Grandmother, Marquez, and Sergeant Cassel. The admission of hearsay statements made by an alleged victim of a sexual offense who is twelve years or younger is controlled by the Tender Years Act, 42 Pa.C.S.A. §5985.1:

> **§ 5985.1. Admissibility of certain statements**
>
> **(a) General rule.**--An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
>
> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>
> (2) the child either:

10

(i) testifies at the proceeding; ... .

42 **Pa.**C.S.A. §5985.1.  Any statement admitted under this exception to the hearsay rule must possess sufficient indicia of reliability, as determined from the time, content, and circumstances of its making. *Commonwealthv. Lukowich,* 875 A.2d 1169 (Pa. Super. 2005).  In determining the reliability of a statement, the court may consider various factors, including "the spontaneity and consistent repetition of the statement; the mental state of the declarant; the use of terminology unexpected of a child of similar age; and the lack of a motive to fabricate." *Commonwealth v. Hunzer,* 868 A.2d 498, 510 (Pa. Super. 2005).

We believe that we were correct in our assessment that the time, content and circumstances of these statements provided sufficient indicia of their reliability.  A.H.'s initial comments to her mother and Grandmother were totally unsolicited and were voluntarily offered by A.H. in the normal course of conversation.  These were made in a timely fashion immediately after the incident when there was little time for A.H. to reflect on what had happened to her or to fabricate details.

When Grandmother attempted to get additional details about the incident, she allowed A.H. to go about her normal playground activities and explain the

11

incident in her own terms. Although Grandmother was upset by the substance of the conversation, she did not show any negative emotion or make any statements until A.H. had finished relating the incident to her. A.H.'s state of mind at the time she gave this account to Grandmother was childlike and innocent, was given in an everyday manner, and exhibited no ill will toward Defendant.

Defendant complains that once A.H.'s account of the incident to Grandmother had been completed, Grandmother reacted by referring to Defendant as "sick," and by stating that such things "shouldn't happen." (N.T. at 30-31) He argues that these comments tainted A.H.'s image of him prior to the interviews which were conducted by the professional authorities. An allegation of taint must be supported by clear and convincing evidence. *Commonwealth v. Luckowich, supra.* We do not believe that Defendant has met this burden here as we find no evidence to suggest that Grandmother's comments undermined the reliability of A.H.'s subsequent statements.

A.H.'s account of this incident was nearly identical when given to all of the witnesses. She consistently described how Defendant kissed her with his tongue and open mouth, touched her "pee pee" and had her touch his "pee pee" before having her place her mouth on his "pee pee." She also repeated that when Defendant "peed" in her mouth, it tasted "gross." When describing what

12

occurred, she pointed to the body part to which she was referring. These are the terms and gestures that would normally be expected of a child of her age. In all her statements, A.H. was also consistent in her description of the conversation between herself and Defendant, Defendant's remarks about kissing, and the location where each part of the incident took place. There was no evidence to suggest a motive for A.H. to fabricate her story.[4]

A.H.'s statements to the witnesses were also corroborated by physical evidence. A.H. stated that Defendant "made it rain" and that he "peed" in her mouth while the two were in Nicole's bedroom. Defendant's DNA was found on stains on the comforter which was taken from Nicole's bed. Both Nicole and Defendant testified that they had never had sexual relations with each other. Although there was testimony that Defendant had stayed at Nicole's apartment at or about Thanksgiving 2008 and Defendant testified that he had borrowed the comforter from Nicole when he was living next door, Nicole testified that she had received the comforter as a Christmas gift just one to two weeks prior to the incident and could not have owned the comforter at any time when Defendant would have been using her bedding.

---

[4] Defendant contends that A.H. had a motive to fabricate this story in order to prevent arguments between Nicole and Bonita. We find no merit to this argument. It is unclear how A.H. would have thought that inventing a story of this nature would lead to harmony between her mother and grandmother.

In the 2010 interview when A.H. met with Detective Grumbine and Marquez, A.H. exhibited signs of being uncomfortable and scared. When a question was posed, she would immediately respond "I don't know," even before the question was asked. She would respond "no" to all inquiries, even innocent test questions to which the normal response would have been affirmative. As a result, that interview was terminated. However, A.H.'s subsequent statements were given when she was able to describe the incident and was not afraid to discuss it.

Marquez allowed A.H. to describe the incident in her own words. Marquez was trained to interview victims of alleged sexual abuse and had already conducted many such interviews by the time she met with A.H.. Marquez explained that although she did ask A.H. some questions, she was careful not to use direct or leading questions or to ask them in any manner which would influence A.H.'s response. A.H.'s state of mind was more conducive to providing relevant accurate information by this point in time and she described, practically verbatim, the same facts that she had previously told Bonita.

We also reviewed the transcript of Sergeant Cassel's 2012 interview of A.H. and find nothing inappropriate with regard to his questioning. Although Sergeant

14

Cassel utilized a question-answer format, we found no instances where he suggested or influenced A.H.'s answers in any way.

Defendant argues that the testimony of Cassel and Marquez was improper because they had access to and utilized the information which had already been provided from other sources prior to and throughout their interviews with A.H.. He contends that such circumstances render their testimony inadmissible under the Tender Years Act as per the holding in *Commonwealth v. Luckowich,* 875 A.2d 1169 (Pa. Super. 2005). In that case, the court permitted a police officer's testimony regarding a child's statements regarding allegations of sexual abuse by the defendant. The Superior Court agreed with the trial court's assessment of the reliability of these statements, noting that:

> ... Detective Washburn deliberately and sufficiently limited his exposure to sources of information who had contact with the victim prior to his interviewing her ... . He testified that he neither reviewed A.L.'s statements to Mr. Walczak nor spoke to him concerning A.L. ... Nor did Detective Washburn have access to the contents of the interview conducted by "Carol" of the Rape Crisis Center. ... Although the statement at issue is in narrative format and does not repeat verbatim the questions posed and the answers given, Detective Washburn did testify that he avoided leading questions.

*Commonwealth v Luckowich, supra* at 1173.

We believe this language was but a part of the court's overall evaluation of the circumstances under which the statements in question were given by the

15

child-victim.  We agree with the Commonwealth that the Tender Years Act does not require that a child's statements to a witness are only admissible if the witness does not have any prior knowledge or information regarding the incident. It is not the possession of such knowledge and information which is relevant to this determination, but rather how the information is used.  Our review of the testimony and the transcript of Sergeant Cassel's interview reveals no indication that A.H. was misled by the questioning or that either witness used the information to suggest or influence A.H.'s responses.

For these reasons, we will deny Defendant's request for a new trial on this basis.

**Weight of the Evidence**

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. To grant a new trial on the basis that the verdict is against the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court. *Commonwealth. v. Childs*, 63 A.3d 323 (Pa.Super. 2013).  A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Widmer*, 744 A.2d at 751–52; *Commonwealth v. Brown,* 538 Pa. 410, 648 A.2d 1177, 1189 (1994). A new trial

16

should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion; rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Commonwealth v. Antidormi*, 84 A.3d 736 (Pa.Super. 2014). The jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. *Commonwealth v. Houser*, 18 A.3d 1128 (Pa. 2011).

Defendant charges that the verdict was contrary to the weight of the evidence because the jury placed too much emphasis on the testimony of the Commonwealth's witnesses. He argues that the testimony of Grandmother, Marquez and Sergeant Cassel should have been excluded under the Tender Years Act and that this testimony gave too much credibility to the victim, especially in light of the contrary testimony he presented at trial. In addition, he argues that undue weight was given to the testimony of DiFiore, the Commonwealth's Forensic expert, in light of the fact that she acknowledged the presence of a second DNA profile in the samples obtained from the comforter.

17

Viewing the evidence in its entirety, we do not find the jury's verdict to be shocking in any manner. A.H. herself testified to the abuse perpetrated upon her by Defendant. Three other witnesses – Grandmother, Marquez and Sergeant Cassel – testified as to statements of identical factual content which A.H. made regarding the incident and this testimony was properly admitted under the Tender Years Act. The jury was free to believe or disbelieve the testimony of all of the witnesses and to accord to their testimony whatever weight it found appropriate. It obviously found the testimony offered by the Commonwealth's witnesses to be more reliable and credible than that offered by Defendant and we find no reason to disturb its findings.

DiFiore testified that some of the semen portion of the stain on the comforter from Nicole's bed contained Defendant's DNA profile. This comforter was on the bed at the time when Defendant "made it rain" and "peed" in A.H.'s mouth. The unidentified DNA was from the non-semen portion of the stain. DiFiore confirmed that the other DNA could have come from another person who lived in the household and was from other bodily matter. The presence of this other DNA does not undermine the finding that Defendant had ejaculated on the comforter.

Accordingly, we will deny Defendant's request for a new trial on this basis.

18

## Sufficiency of the Evidence

Defendant also argues that there was insufficient evidence to support the jury's verdict. He claims that the Commonwealth's evidence was insufficient as to all counts due to the presence of the separate DNA profile, which was never identified, coupled with the fact that another person, Charles Tappley was in the apartment on the night of this incident.[5] Defendant asserts that he was only told that his DNA had been found, not that it was on the comforter, and that once he learned that fact he provided a credible explanation as it had been loaned to him prior to its being confiscated by Sergeant Cassel. He claims that the issue of when Nicole received the comforter was never established and that there were numerous other stains on the comforter, some of which contained seminal fluid but were never analyzed.

When considering a claim challenging the sufficiency of the evidence, the court must determine whether the Commonwealth established beyond a reasonable doubt every element of the offense charged by considering the entire trial record and all the evidence received, and view all reasonable inferences

---

[5] Defendant complains that Tappley was not contacted until seven days prior to the trial. However, he does not indicate what evidence would have been obtained had Tappley been included in the investigation earlier. Defendant was certainly free to contact Tappley prior to that time.

drawn therefrom in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Pruitt,* 951 A.2d 307, 313 (Pa. 2008). The defendant's guilt may be established by direct evidence, circumstantial evidence, or both. *Commonwealth v. Segida,* 985 A.2d 871 (Pa. Super. 2009). It is within the province of the jury to determine the credibility of the witnesses. *Commonwealth v. Burns,* 765 A.2d 1144 (Pa. Super. 2000).

After viewing the evidence in the light most favorable to the Commonwealth here, we find there was sufficient evidence to sustain the jury's verdict of guilt on these charges. The jury was aware of Tappley's visit to the apartment that evening and DiFiore's testimony regarding the separate DNA found on the comforter. It was free to consider this evidence in whatever manner it found appropriate. It was also presented with A.H.'s testimony, which was bolstered by the statements she made to the other Commonwealth witnesses, which identified Defendant as the one who committed these acts upon her. The fact of Defendant's DNA being present on the comforter corroborates A.H.'s testimony of the events which took place in Nicole's bedroom. Whether any other DNA was found in any of the other stains present on the comforter does not change the fact that Defendant's semen was also present. The jury was free to accept this evidence as well as Nicole's testimony as to the date she had received

20

the comforter as a Christmas gift. The jury was likewise entitled to disregard Defendant's explanation for the presence of his DNA and any inference he hoped to assert by presenting evidence of Tappley's presence in the apartment that evening.

We will deny Defendant's request for acquittal on this basis.

ENTERED & FILED
CLERK OF COURTS
LEBANON, PA

2015 APR 15   AM 11 38

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :       NO.  CP-38-CR-1208-2013
                                 :
          v.                     :
                                 :
STEPHEN M. KENNEDY               :

ORDER OF COURT

AND NOW, to wit, this 15th day of April, 2015, we issue the attached

Opinion under Pa.R.A.P. 1925.  We direct the Lebanon County Clerk of Courts to

forward this Opinion and the entire file to the Superior Court of Pennsylvania as

promptly as possible.

BY THE COURT:

_____, P.J.
JOHN C. TYLWALK

JCT/jah
Cc:  Megan E. Ryland-Tanner, Esquire
     Erin Zimmerer, Esquire/60 South Main Street, Manheim, PA  17545
     Judith A. Huber, Esquire, Law Clerk

PURSUANT TO Pa.R.Crim. P. 114
All parties are hereby notified
this date:___7-15-15___.
Clerk of Courts, Lebanon, PA

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :  NO. CP-38-CR-1208-2013
:
v.  :
:
STEPHEN M. KENNEDY  :

**APPEARANCES:**

**MEGAN RYLAND-TANNER, ESQUIRE**      **FOR THE COMMONWEALTH**
**ASSISTANT DISTRICT ATTORNEY**

**ERIN ZIMMERER, ESQUIRE**      **FOR STEPHEN M. KENNEDY**
**MONTGOMERY & ZIMMERER, LLC**

**OPINION, TYLWALK, P.J., APRIL 15, 2015.**

Defendant was charged with one count of Involuntary Deviate Sexual

Intercourse with a Child, one count of Indecent Assault, one count of Corruption

of Minors, one count of Endangering the Welfare of Children and one count of

Indecent Exposure.[1] After a jury trial on January 9, 2014, he was convicted of all

charges. The Commonwealth had filed a Notice to Proceed Under Tender Years

Doctrine, 42 Pa.C.S.A. §5985.1(a)(2)(i) on December 13, 2103 and we had

conducted a Tender Years Hearing immediately prior to the commencement of

---

[1] Counts 1 through 5, 18 Pa.C.S.A. §3123(b), 18 Pa.C.S.A. §3126(a)(7), 18 Pa.C.S.A. §6301(a)(1), 18
Pa.C.S.A.4304(a)(1), and 18 Pa.C.S.A. §3127(a), respectively.

trial on January 9, 2014. Defendant was sentenced, *in absentia*,[2] to an aggregate term of ten (10) to (30) years' incarceration on March 26, 2014.

Defendant filed a timely Post-Sentence Motion asserting that (1) we had erred in permitting statements of various witnesses from the Tender Years Hearing, (2) that the jury's verdict was against the weight of the evidence presented at trial, and (3) that there was insufficient evidence to support the verdict of the jury. We denied the Post-Sentence Motion by Order of August 1, 2014. Defendant filed a Notice of Appeal of that Order on September 3, 2014. The Appeal was quashed as untimely by the Superior Court by Order dated October 6, 2014. Thereafter, Defendant proceeded under the Post-Conviction Relief Act, 42 Pa.C.S.A. §9541 *et seq* and we restored his appellate rights by Order of January 28, 2015.

Defendant filed a second Notice of Appeal on February 12, 2015. In his Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), he lists the following issues to be addressed on appeal:

1. Defendant was denied the assistance of an attorney for his Preliminary Hearing, despite his request for representation;

---

[2] On the date scheduled for Sentencing, Defendant refused to leave his cell at Lebanon County Correctional Facility to appear before the Court.

2. Defendant was not provided with the transcript of his Preliminary Hearing;

3. The Commonwealth disclosed evidence to the defense for the first time only minutes prior to the commencement of the jury trial in this matter;

4. The Commonwealth failed to disclose information that the victim's mother and guardian were involved with police and Lebanon County Children and Youth Services and were given lesser sentences due to this action;

5. Defendant did not have sufficient notice of the Tender Years Hearing;

6. The verdict was against the weight of the evidence regarding the Commonwealth's DNA analysis and conflicting witness testimony; and

7. The evidence was insufficient to sustain a verdict of guilty with regard to these charges.

We addressed Defendant's challenges to the weight and sufficiency of the evidence and the admission of testimony from the Tender Years Hearing in our Order and Opinion resolving his Post-Sentence Motion and we refer to the reasoning set forth therein for appellate review.

With regard to issues raised on appeal,

[i]ssues raised before or during trial are deemed preserved for appeal whether or not the defendant elects to file a postsentence motion on those issues. Thus, as long as an issue is preserved before or during the course of the trial, the litigant need not return to the trial court and again request the relief after conviction and sentencing by postsentence motion.

The failure to brief or argue an issue in a postsentence motion does not waive that issue on appeal as long as the issue was properly preserved, in the first instance, before or during trial.

26A *Standard Pennsylvania Practice 2d* § 132:610.

Our review of the record reveals that Defendant's Preliminary Hearing was not recorded by a stenographer and that there is no transcript of that proceeding. This issue was discussed at Sentencing. Prior to our imposition of Sentence, Defense counsel indicated that Defendant had requested a transcript of the Preliminary Hearing and that she had investigated the possibility of obtaining one; however, she discovered that there was none in existence after checking with the Assistant District Attorney who represented the Commonwealth at the Preliminary Hearing, the office of the District Magistrate who conducted the Preliminary Hearing, Court Administration, and the Court Reporting Service used by the Office of the Public defender for private stenographers. (N.T. Sentencing March 26, 2014 at 3) Defense counsel also advised the Court that she had related

to Defendant the steps she had taken in order to verify that there was no transcript. (N.T. Sentencing March 26, 2014 at 3)

Defendant also complains of the timeframe with regard to the Commonwealth's notice that it intended to proceed under the Tender Years Doctrine. The Commonwealth filed its Notice on December 13, 2013. The Notice listed all witnesses who were expected to testify at the Hearing and a synopsis of their testimony. Defendant's trial was listed for the term of Criminal Jury Trials which was scheduled to commence on January 6, 2014. (See Order dated November 27, 2013) Defendant knew that his case was listed for the January 2014 Trial Term and therefore knew that the Tender Years Hearing would have to be conducted prior to the commencement of trial. After Call of the List was held on January 6, 2014, Defendant's trial was set for January 9, 2014 with the Tender Years Hearing immediately preceding it. We believe that the period of over three weeks' time between the filing of the Notice and the Tender Years Hearing afforded Defendant ample time to conduct his own investigation and to prepare his defense. This complaint was raised for the first time in his Concise Statement on appeal.[3] Defendant does not specify any issues which he was unable to

---

[3] Defendant lodged no objection to our conducting the Tender Years Hearing at the time of the Hearing and did not raise the issue in his Post Sentence Motion.

identify and deal with within this timeframe and we are unable to identify any on our own.

Defendant also complains that he had requested an attorney to represent him at the Preliminary Hearing, but that he was denied his right to counsel. In addition, he contends that the Commonwealth did not disclose certain evidence to the defense until minutes before the commencement of trial although it had the evidence in its possession for several years and that, as a result, he was unable to prepare an adequate defense. Lastly, he complains that the Commonwealth failed to disclose to him information regarding the involvement of the victim's mother and guardian with police and Children and Youth Services.

All of these issues are raised for the first time in the Concise Statement. There is nothing in the record to apprise us of the specifics of these matters. We have no information regarding Defendant being denied the services of an attorney for his Preliminary Hearing or the evidence of which he claims to have been deprived. At this point in the proceedings, we are unable to conduct a factual hearing to determine the circumstances surrounding these claims. We do note that the fact of the family of the victim in this matter being involved with Children and Youth Services did arise during testimony at both the Tender Years Hearing and Trial and that Defendant had ample opportunity to utilize this

information during cross-examination and the presentation of his defense at Trial. (N.T. Trial 1/9/14 at 54, 71; NT Tender Years Hearing 1/9/14 at 25, 30, 32) The record of this matter is insufficient for us to make any further comments on these matters. These issues may be better addressed in a proceeding other than this appeal.